[No. 3025–2.   Division Two.   August 7, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. LYNN D. HOUSER, *Appellant.*

*C. C. Bridgewater, Jr.,* for appellant (appointed counsel for appeal).

*Henry Dunn, Prosecuting Attorney,* and *Kenneth L. Cowsert, Deputy,* for respondent.

PEARSON, C.J.—Defendant was charged and convicted on two counts of possession of a controlled substance based on evidence of barbiturates and heroin found in the trunk of his car following an impound inventory search. Defendant's motion to suppress the evidence was denied. He appeals both the reasonableness of the impound and the scope of the search. We affirm.

Defendant was pulled over by the state patrol on a Friday at 11:15 a.m. for driving with studded tires out of season, and making an illegal left turn. Defendant stopped his vehicle in or next to a supermarket parking lot just off West Main Street in Kelso.[1] When asked by Trooper McNett for his driver's license, defendant was unable to produce one, but he did hand McNett a temporary registration and an identification card with the name Anthony Kimber. The car had Oregon license plates and according to the registration, Kimber was an Oregon resident. McNett checked Anthony Kimber's description and found it did not match the defendant's. "At that time I placed him under arrest for the improper turn and went to his vehicle to attempt to identify whose it actually was," said McNett. "In the passenger's compartment in the front seat area there were some papers. I looked at these papers. They were an insurance claim application form bearing the name Lynn Houser."

---

[1]The record is unclear as to exactly where the car was parked.

McNett checked the name Lynn Houser and found his description matched the defendant's. He also discovered that Houser's driver's license was suspended. He then advised the defendant that he was under arrest, for obstructing a police officer and driving with license suspended. At that point, McNett asked defendant what he wanted to do with the vehicle. Defendant gave McNett several names of persons who could pick up the vehicle. One of these persons, Timothy Moss, agreed to come and get the car. While waiting for Moss to arrive, McNett searched the car for "more papers," and found the title and registration, which were made out to Anthony Kimber. He determined that the car had not been reported stolen and stated that he did not think he had probable cause to believe it to be stolen. Nevertheless, he had second thoughts about turning the car over to Moss and decided that "the vehicle should be held for identification and ordered it impounded."

McNett called Trooper O'Neill to the scene and asked him to perform a preimpoundment inventory search. In a toilet kit, inside a shopping bag, inside the locked car trunk, Trooper O'Neill discovered the contraband.

The motion to suppress was combined with a trial before a judge, the right to a jury trial having been waived. The trial court upheld the impoundment procedure for the reason that the police had reasonable cause to hold the automobile until the true owner could be identified. *See State v. Proctor,* 12 Wn. App. 274, 529 P.2d 472 (1974).

Defendant raises two arguments on appeal. First, he contends that under the circumstances it was unreasonable to impound his car. Second, he argues that the scope of the inventory search was too broad, and, therefore, unreasonable.

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' . . . automobiles are frequently taken into police custody." (Citation omitted.) *South Dakota v. Opperman,* 428 U.S. 364, 368, 49 L. Ed. 2d 1000, 1005, 96 S. Ct. 3092, 3097

(1976). Police may lawfully impound a vehicle when authorized by statute or ordinance, or, in their absence, for reasonable cause. *State v. Bales,* 15 Wn. App. 834, 552 P.2d 688 (1976); *State v. Greenway,* 15 Wn. App. 216, 547 P.2d 1231 (1976); *State v. Singleton,* 9 Wn. App. 327, 511 P.2d 1396 (1973). The State bears the burden of proving reasonableness, including a demonstration that police "at least thought about alternatives" to impoundment. *State v. Hardman,* 17 Wn. App. 910, 914, 567 P.2d 238 (1977).

Trooper McNett impounded defendant's car because he was unable to ascertain from the registration and title who the true owner of the vehicle was. The defendant lied about his identity and tried to make the officer believe that he was the person who was named on the title and registration. This made the officer reasonably suspicious that perhaps the car had been recently stolen and its theft had not yet been reported to police. The officer considered turning the car over to defendant's friend, but decided this would be imprudent in view of his suspicions. His decision was reasonable under the circumstances. The officer in his community caretaker capacity had a duty to determine ownership of the car. He was entitled to take custody of the car to prevent its disappearance until he could determine the proper person to whom to release it. *See State v. Malbeck,* 15 Wn. App. 871, 552 P.2d 1092 (1976); *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975).[2]

Defendant's second argument relates to the scope of an inventory search. He contends that opening a locked trunk of a car is unnecessary in an inventory search, and therefore unreasonable. *See United States v. Edwards,* 554 F.2d 1331

---

[2]We do not reach the issue of whether it was proper for the police to arrest Mr. Houser in the first place. In *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978), our Supreme Court announced new guidelines for custodial arrests arising out of minor traffic violations; however, the court specifically provided that no person "who was taken into custody prior to the filing of this opinion shall receive any rights as a result of the rule we announce in this case." *State v. Hehman, supra* at 50. Also, the court's ruling was prospective in application.

34

(5th Cir. 1977). The purposes for an inventory are well established in this state:

> (1) finding, listing, and securing from loss during detention, property belonging to a detained person, (2) protecting police from liability due to dishonest claims of theft, and (3) protecting temporary storage bailees against false charges.

*State v. Gluck,* 83 Wn.2d 424, 428, 518 P.2d 703 (1974); *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968).

■ In order to effectuate these purposes, it was necessary for the police to check the car's trunk as well as its interior. We are aware of narrow interpretations of *South Dakota v. Opperman, supra,* wherein the Supreme Court upheld an inventory search of an unlocked glove box. However, we find nothing in *Opperman* which would invalidate our previous holding that inventory searches of locked trunks are constitutionally permissible. *State v. Potts,* 1 Wn. App. 614, 464 P.2d 742 (1969). *See also* Annot., 48 A.L.R.3d 537 (1973).

Finally, defendant argues that even if it was proper for the police to inventory the contents of defendant's locked car trunk, the police should not have searched inside a shopping bag and toilet kit found therein. *United States v. Chadwick,* 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977). *Chadwick* is distinguishable because it involved a double–locked footlocker found inside a trunk. The added precaution of a locked container greatly increased the privacy interest at stake and caused the Supreme Court to condemn the search. Here we find no similar expectation of privacy in an open shopping bag and zippered toilet kit.

The judgment is affirmed.

PETRIE and SOULE, JJ., concur.

Reconsideration denied September 5, 1978.

Review granted by Supreme Court January 19, 1979.