[No. 3178–2. Division Two. February 26, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. RANDALL
A. ORCUTT, *Appellant*.

*Roethler & McCulloch* and *Clifford R. Kuhn,* for appellant (appointed counsel for appeal).

*Henry Dunn, Prosecuting Attorney,* for respondent.

PEARSON, C.J.—Defendant appeals his conviction for possession of psilocybin mushrooms, a controlled substance under RCW 69.50.401(c). The sole issue on appeal is whether a warrantless search of his automobile by the police which resulted in discovery of the mushrooms was constitutionally permissible. We hold that the evidence should have been suppressed.

The sequence of factual events culminating in the search commenced when Officer Sewell of the Kelso Police Department observed defendant driving an automobile with a defective brake light at 5:50 a.m. on Saturday, October 15, 1977. Defendant stopped on a residential street and Sewell continued patrolling without contacting him. Half an hour later, Sewell observed defendant driving the same car, and Sewell turned around behind him to effect a stop for the defective light. Defendant immediately turned into a Quick Stop shop, exited the car, and went into the store. He emerged in a short time, entered the car, drove around the parking lot, and then behind a nearby veterinary clinic to a grassy area not used for parking. Sewell became suspicious of this conduct and drove to the grassy area to contact defendant, but discovered defendant was not in the car.

Sewell had radioed for assistance while waiting on the street across from the Quick Stop. He had also run a radio check of the car and learned that it was not reported as stolen. But he was unable to determine ownership of the vehicle because the computer used for that purpose was not operating. These factors, together with a description of defendant's conduct, were all relayed to another patrolman, Officer Ambrose.

While Sewell proceeded to search for defendant, Ambrose arrived and positioned his car to prevent anyone from driving out of the grassy lot. Ambrose approached the vehicle, noticed the driver's door opened about 4 or 5 inches and a large quantity of "stuff" piled both on the back and front seats, namely, sleeping bags, clothing, guitar, bags and boxes. No one was present in the car.

Ambrose opened the driver's door, climbed into the front seat, and proceeded to look for vehicle identification. Finding no registration certificate on the visor, he opened the glove compartment, where he observed, among a great many tools and papers, an open pack of Zig Zag cigarette papers and what appeared to be some brownish flakes of marijuana. The flakes were scattered over a 3–inch area.

When a hasty search of the glove box did not disclose a registration certificate, Ambrose closed the glove compartment, exited the car, and proceeded to search for the driver. Following some tracks in the grass which proceeded around the clinic building, Ambrose saw defendant running away. He followed defendant on foot, went around a house, and found defendant lying on the wet ground in some brush. Ambrose frisked defendant, checked his identification, and held him until learning by radio that defendant had been driving with a suspended license. At this point defendant was arrested for driving with a suspended license.

The officers told defendant that his car would have to be moved, but when defendant asked if he could move it himself the officers refused. Instead, defendant consented to Officer Ambrose's moving the car back to the store parking

lot so that his belongings would be secure. It was at this point that Ambrose made a second search of the interior of the vehicle. In a sack on the front seat floor area, Ambrose discovered the psilocybin mushrooms, together with a book on psychoactive mushrooms, a book on home grown marijuana, and some pipes. These items were allowed in evidence at the trial over defendant's objections.

■ Subject to only a few exceptions, a warrantless search is per se unreasonable under the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

> The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." "[T]he burden is on those seeking the exemption to show the need for it."

(Footnotes omitted.) *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022 (1971); *State v. Bean,* 89 Wn.2d 467, 572 P.2d 1102 (1978).

Defendant challenges both the initial limited intrusion in which the officer sought to locate the vehicle registration certificate, and the second exploratory search in which the mushrooms were discovered.

Analysis of these challenges requires that we consider two recognized exceptions to the search warrant requirement as applied to automobiles. The first, arguably applicable to the initial intrusion, is the so-called "community caretaking function." *Cady v. Dombrowski,* 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973); *South Dakota v. Opperman,* 428 U.S. 364, 368, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). Another exception arguably applicable to the second general exploratory search requires a finding of probable cause to search plus exigent circumstances which justify the police in proceeding without a warrant. *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925); *State v. Cuzick,* 21 Wn. App. 501, 585 P.2d 485 (1978).

734

■ We begin our analysis by observing that whichever exception we are considering, an automobile search must nevertheless meet constitutional requirements of reasonableness, *Cooper v. California,* 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788 (1967); *State v. Cuzick, supra;* and the question of reasonableness always involves a consideration of the facts and circumstances of the case and a balancing of the governmental interests with the individual's right and expectation of privacy. *Cf. Camara v. Municipal Court,* 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967).

### INITIAL INTRUSION

In *South Dakota v. Opperman, supra,* at 368–69, the United States Supreme Court recognized the "community caretaking function" exception and applied it to preimpoundment inventory searches. The court likewise recognized this exception as essential where police are "respond[ing] to incidents of theft or vandalism," or where police must determine "whether a vehicle has been stolen and thereafter abandoned."

The constitutional issue thus is whether the governmental interest in determining the vehicle ownership justified a limited intrusion into the glove box in search of a registration certificate, where the operator (1) drives evasively in the presence of the police, (2) abandons the vehicle under unusual circumstances in an unusual place, with the driver's door open and the vehicle full of personal property, (3) where the police are unable to ascertain ownership by any other prompt measures, and (4) defendant is fleeing from the police.

■ These circumstances are, we think, sufficient to create a reasonable belief that the vehicle may have been stolen. At the precise time of this limited search, the automobile driver was fleeing from the police who sought to question him with reference to his suspicious driving behavior and also with reference to a driving violation. *See State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974); *State v. Davis,* 12 Wn. App. 32, 527 P.2d 1131 (1974).

The officer entered the car for the limited purpose of checking ownership identification and looked in the appropriate place for such documentation.[1] The very fact that the automobile was left unoccupied, when the officer knew defendant had occupied it only moments before and had left the door open at the risk of its contents, created not only a reasonable doubt as to the legitimacy of defendant's activities, but also a reasonable belief that the vehicle might be stolen.

Under all these circumstances, the governmental interest in ascertaining the vehicle ownership outweighed the limited invasion of privacy, and in our view qualified as an appropriate "community caretaking" exception to the search warrant requirement. *South Dakota v. Opperman, supra.*

### SECOND EXPLORATORY SEARCH

█ The pivotal issue with reference to the second search is whether discovery of the marijuana residue in the glove compartment[2] warranted a further exploratory search of the vehicle. By the time this search was made, defendant was under arrest on a suspended license charge. The vehicle had been driven to a secure place where it could be left while arresting procedures were accomplished. At this time ownership of the vehicle was no longer in doubt. The police had no intention of impounding the vehicle, and we decline to consider the exploratory second search as an inventory search pursuant to a lawful impoundment. *Chambers v. Maroney, supra; State v. Houser,* 21 Wn. App. 30, 584 P.2d 410 (1978).

The only search warrant exception of arguable merit is that the discovery of marijuana residue in the glove box

---

[1]The scope of the caretaking function search is limited to the extent necessary to carry out the caretaking function. *South Dakota v. Opperman,* 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976).

[2]Seizure of the flakes of marijuana would have been reasonable under the plain view doctrine, since the officer viewed them while rightfully positioned; the evidence was inadvertently discovered and was incriminating. *See State v.*

created probable cause to believe that the vehicle contained other contraband and that exigent circumstances existed sufficient to warrant dispensing with a search warrant. *See State v. Cuzick, supra.*

■ Probable cause exists where the facts and circumstances within the knowledge of the officer making a search are sufficient in themselves to warrant a man of reasonable caution in the belief that the automobile contained other contraband. *Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949).

We view the issue of probable cause as extremely close. Officer Ambrose saw a few brownish flakes scattered over a 3–inch area of the glove box, and based upon his experience and the fact that the compartment also contained Zig Zag cigarette papers, he concluded that he was looking at marijuana. There was no indication of how long the flakes had been there and apparently the amount was too minute to offer as evidence at defendant's trial. After seeing the flakes, the officer arrested defendant for driving while suspended and neither questioned defendant concerning the marijuana or even mentioned to defendant that it had been observed. Instead the officer indicated to defendant that his car would have to be moved to "secure" its contents. He then proceeded with the search.

We are not prepared to rule that discovery of contraband in one area of a car might not furnish probable cause to search another part. However, we think the circumstances of this case give rise to conflicting inferences. For example, one generalized assumption might be that one who possesses even a small quantity of marijuana and carries it in his car is likely to possess and carry more in his automobile. Another assumption might be that the possessor of the Zig Zag papers with the residual flakes carried marijuana for his personal use only and that his supply was exhausted.

*Nichols,* 20 Wn. App. 462, 581 P.2d 1371 (1978). But the doctrine would not be applicable to contraband not plainly visible, *i.e.,* the mushrooms. *See State v. Howard,* 7 Wn. App. 668, 502 P.2d 1043 (1972).

■ The point is that the observation of the papers and residue of marijuana in the glove box is an inherently ambiguous observation, and in our view suggests the desirability if not the necessity for a review of all the facts by a neutral and detached magistrate where the exigencies of the circumstances permit.

Furthermore, the officer's failure to question the defendant about his observation in the glove box strongly suggests the discovery of the marijuana provided a pretext, rather than probable cause to search the vehicle. *See State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978).

Assuming arguendo that Officer Ambrose did have cause to believe defendant's automobile contained more contraband, we are persuaded that there was insufficient evidence of exigent circumstances to justify the search without first presenting the evidence to a neutral and detached magistrate.

None of the elements normally associated with exigent circumstances as discussed in *Coolidge v. New Hampshire, supra* at 462, are present here—and in our view that case is controlling on the issue: "In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant' . . ."

The vehicle here was in no danger of departure. It was secure. There was more than one officer available to effect a defendant's arrest and obtain the warrant while the other watched the vehicle and secured its contents. Absent exigent circumstances, the warrantless search even with probable cause violated the Fourth Amendment. *Coolidge v. New Hampshire, supra.*

The evidence should have been suppressed.

Reversed and remanded.

PETRIE and REED, JJ., concur.