[No. 7089–4–I.  Division One.  February 25, 1980.]

THE STATE OF WASHINGTON, *Appellant*, v. MICHAEL ANTHONY GRUNDY, ET AL, *Respondents*.

412

*Norm Maleng, Prosecuting Attorney,* and *Joanne Y. Maida, Deputy,* for appellant.

*Douglass A. North* and *Hennings, Maltman, Weber & Reed,* for respondents.

CALLOW, C.J.—The State appeals the granting of a defense motion to suppress evidence in the second–degree burglary prosecution of Michael and Dwayne Grundy.

The issues presented are:

1. May the State raise the issue of standing for the first time on appeal, and if so, do the defendants have standing to challenge the search?

2. When police officers detain persons under suspicious circumstances but lack probable cause to arrest, may they make a warrantless search of a nearby locked footlocker for the purpose of determining its ownership?

3. If the search of the footlocker was unlawful, was the seizure of a previously observed amplifier a lawful plain view seizure or the fruit of an illegal search?

On May 27, 1978, at about 4:45 a.m., an officer of the Seattle Police Department was on patrol and observed an illegally parked car with its hood and trunk up. As he slowed his car, the defendants told him they were having gas problems with their car. Driving on, the officer noticed the license plate, "Mr. Penn," which he associated with a family he believed to be involved with burglaries. He also noticed what appeared to be stereo equipment in the open trunk. As the officer returned to investigate, one of the suspects honked the horn, moved quickly to the rear of the car and shut the trunk.

The officer asked for identification but both suspects said they had none. They identified themselves as Michael Grundy and Dino, and said they had just left a party around the corner. The officer associated the name "Grundy" with the Penn family.

At the officer's request, the car was started, and the officer concluded that nothing was wrong with the car. He inquired about the party, and the suspects could not give him an address or a location, but said they had to leave the freeway at 130th to get there. The officer knew 130th was 3 miles north of their location. "Dino" then stated that his name was Thomas and that he was visiting from Portland. However, the officer heard Michael refer to him as Dwayne.

The officer then asked about a footlocker lying next to the car. The suspects stated that it was a toolbox which belonged to their brother which they had removed from the trunk in order to work on the car. The officer saw that the footlocker was locked with a padlock, and the suspects said they did not have a key. It also did not appear to fit in the trunk, but the suspects said they intended to put it in the back seat. The officer thought the footlocker was too large and too clean to be a toolbox.

The suspects invited the officer to search the car. Inside the trunk, he found an amplifier and two unlocked toolboxes. The amplifier had a dry top and wet bottom, which the officer believed was unusual because it was raining and the trunk had previously been open. The officer was given permission to determine via a radio check whether the amplifier was stolen. He checked and it was not reported stolen, but he felt it would not have been reported if it had just been stolen.

The officer decided to open the footlocker to determine its true ownership. He did not ask the suspects' consent before opening it. The contents of the footlocker led to the discovery that it was stolen from a nearby house. The victim identified the footlocker, the amplifier and a puppy that was with the suspects as belonging to his son. The defendants claimed they had purchased these items from his son.

The trial court's findings are unchallenged on appeal, and the State concedes there was no probable cause to arrest the defendants prior to opening the footlocker. The trial court suppressed the footlocker, its contents, the amplifier, all evidence obtained from the victim and the defendants' statement to the victim. The trial court ruled that all statements made by the defendants to the police during their lawful detention were voluntary and admissible.

The first issue raised is whether the State can raise the issue of standing for the first time on appeal, and if so, do the defendants have standing to challenge the search? The

State contends that the defendants did not show any personal Fourth Amendment rights in the property seized because they consented to the car search, they admitted they had no possessory interest in the footlocker, and their false assertion that it belonged to a brother cannot establish standing. *Rakas v. Illinois,* 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978). The State contends standing is quasi–jurisdictional and can be raised for the first time on appeal because courts have no authority to rule on constitutional rights which do not belong to the parties before them, citing *Combs v. United States,* 408 U.S. 224, 33 L. Ed. 2d 308, 92 S. Ct. 2284 (1972). The defendants contend (1) that the State never challenged their standing in the trial court and cannot raise the issue for the first time on appeal, citing *State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979); *State v. Reano,* 67 Wn.2d 768, 409 P.2d 853 (1966), and (2) that the trial court's unchallenged finding that the defendants stated the footlocker belonged to their brother was a finding of an assertion of a possessory interest in the footlocker in which they had a reasonable expectation of privacy, citing *Rakas v. Illinois, supra; United States v. Chadwick,* 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977).

There is nothing quasi–jurisdictional about "standing" to justify an exception to the general rule that issues cannot be raised for the first time on appeal. *Rakas v. Illinois, supra,* held that "standing" is part of substantive Fourth Amendment law. As such, it is like any other search and seizure question which the State must raise at trial before we will consider it on appeal. *State v. Wicke, supra.*

*Combs v. United States, supra,* is distinguishable. The government in that case raised standing for the first time on appeal *as a respondent.* Further, the case involved the intrusion into a home, not personal property on a public street. The court remanded the case for a hearing because the record contained no facts relevant to standing. This willingness to give the government a hearing on a new issue is explained by the duty of an appellate court to affirm

upon any ground supported by the record, even if not the ground utilized by the trial court. *State v. Carroll,* 81 Wn.2d 95, 500 P.2d 115 (1972); *State v. Broussard,* 12 Wn. App. 355, 529 P.2d 1128 (1974). Here, the State seeks to raise this issue *as an appellant.* By not raising the issue below, the State never challenged the Grundys to prove their standing and never gave the trial court an opportunity to rule. Under these circumstances, we adhere to the rule that an *appellant* may not raise an issue for the first time in this court unless the fundamental rights of an accused are involved.[1] *State v. Wicke, supra.*

■■ Nonetheless, on the record before us, the Grundys had standing. While they denied ownership of the footlocker, they asserted a possessory interest as their brother's bailee.[2] It is the assertion of a possessory interest in the property searched which gives them the right to challenge the legality of the search. *Rakas v. Illinois, supra.* The falsity of that assertion was determined only by opening the footlocker, and if that search were illegal, it could not be justified by what it revealed. *State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243, *cert. denied,* 423 U.S. 891, 46 L. Ed. 2d 122, 96 S. Ct. 187 (1975); *State v. Singleton,* 9 Wn. App. 327, 511 P.2d 1396 (1973).

The second issue raised is whether, when police officers detain persons under suspicious circumstances but lack probable cause to arrest such persons, they may make a warrantless search of a nearby locked footlocker for the purpose of determining its ownership. The State contends

---

[1]This doctrine will not be invoked to allow the State, as an appellant, to challenge for the first time an allegedly unwarranted protection of the accused's constitutional rights. *See State v. Byers,* 88 Wn.2d 1, 12, 559 P.2d 1334 (1977).

[2]The State contends this evidence was hearsay and not admissible to prove standing. The State elicited this evidence from its own witness and cannot now complain it was erroneously admitted. *State v. Atkinson,* 19 Wn. App. 107, 575 P.2d 240 (1978). Furthermore, the evidence was not hearsay because it was not used to prove the truth of the matter asserted (that the footlocker belonged to their brother). It was used to show that they asserted a possessory interest. *State v. Thompson,* 17 Wn. App. 639, 564 P.2d 820 (1977).

that where police officers had no prior notice that a crime was going to occur and detained suspects gave evasive and incorrect statements, under such circumstances it was reasonable as part of their community caretaking function to open the footlocker to determine its rightful owner. *State v. Webster,* 20 Wn. App. 128, 579 P.2d 985 (1978); *State v. Houser,* 21 Wn. App. 30, 584 P.2d 410 (1978), *appeal granted,* 91 Wn.2d 1010 (1979). The Grundys argue that the warrantless search was without probable cause and without any exigent circumstances to justify it. They assert that the action by the police exceeded the permissible scope of a search without probable cause during a detention. They argue that the privacy interest in a locked footlocker greatly exceeds that in a purse in which personal identification is being sought. *United States v. Chadwick, supra.*

In *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979), *United States v. Chadwick, supra,* was reaffirmed and the warrant requirement of the Fourth Amendment was applied to luggage removed from an automobile. The court stated at page 766:

> Where—as in the present case—the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained.

The State, however, contends that the lack of probable cause somehow allows a warrantless search where none would be allowed with probable cause. It is argued that the community caretaking function of the police allows a warrantless search under these circumstances, citing *State v. Houser, supra.* This exception, however, applies only to preimpoundment inventory searches of automobiles, police response to reported theft or vandalism, or where it is necessary to determine whether an automobile is stolen and abandoned. *State v. Orcutt,* 22 Wn. App. 730, 591 P.2d 872 (1979); *State v. Houser, supra.* None of these circumstances exists here.

The State contends further that the search was reasonably related in scope to the officer's lawful investigation of suspicious circumstances. Relying on *State v. Webster, supra,* it is argued that the intrusion was justified to determine ownership of the footlocker because of evasive and incorrect statements made by the suspects. The *Webster* opinion allowed a limited intrusion into a purse to obtain the *identity* of an evasive suspect. As part of a lawful detention, officers may require a suspect to identify himself. *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974). Here, the officers were not seeking the identity of a suspect; they were looking for evidence of the ownership of a locked footlocker. Their search exceeded the scope of the search in *Webster,* and due to the lack of either probable cause or consent, it was an unreasonable attempt to extend the narrowly drawn limits of a search incident to a lawful detention. *Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979).

The last issue presented asks, if the search of the footlocker was unlawful, was the seizure of a previously observed amplifier a lawful plain view seizure or a fruit of the illegal search? The State argues that the amplifier was lawfully observed in plain view in the trunk so its seizure was independent of the footlocker search. *State v. Glasper,* 84 Wn.2d 17, 523 P.2d 937 (1974). The Grundys argue that the original observation of the amplifier was not under circumstances where the officers immediately recognized they had stolen property before them and its subsequent seizure was the product of the unlawful search of the footlocker. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182, 24 A.L.R. 1426 (1920).

In *State v. Glasper, supra,* the police had reasonable cause to believe that the property which came into their plain view was stolen. *State v. Glasper, supra* at 21. Here, there was no such probable cause until after the unlawful search of the footlocker. The seizure of the amplifier was the fruit of that unlawful search, and it cannot be used as

evidence. *State v. York,* 11 Wn. app. 137, 521 P.2d 950 (1974).

The judgment is affirmed.

SWANSON and RINGOLD, JJ., concur.

Reconsideration denied April 17, 1980.

Review denied by Supreme Court February 13, 1981.