UNITED STATES of America, Plaintiff-Appellee,

v.

**Lawrence William CLEARY, Jr.,** Defendant-Appellant.

No. 80–1557.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1981.

Decided May 18, 1981.

As Corrected Sept. 8, 1981.

Rehearing Denied Sept. 8, 1981.

Eugene A. Wright, Circuit Judge, dissented and filed opinion.

Marc B. Geller, San Diego, Cal., for defendant-appellant.

George D. Hardy, Asst. U. S. Atty., argued, M. James Lorenz, U. S. Atty., George D. Hardy, Asst. U. S. Atty., on brief, San Diego, Cal., for plaintiff-appellee.

Before WRIGHT and NELSON, Circuit Judges, and EAST *, District Judge.

NELSON, Circuit Judge:

Lawrence Cleary appeals from his conviction for possession and concealment of counterfeit bills with intent to defraud, a violation of 18 U.S.C. § 472. Because we find that the bills on which the conviction was based were found pursuant to an unconstitutional search, we reverse.

*I. Fact Summary*

While on routine patrol at the San Diego Airport, Harbor Police Officer Reginald Schumacher approached a van with a bro-

---

* The Honorable William G. East, Senior United. States District Judge, District of Oregon, sitting by designation.

ken side mirror and tapped on the driver's side window. When Cleary, the appellant, opened the window slightly, Schumacher smelled marijuana. Cleary's hands appeared to be covering an object from which a trace of smoke was rising. The officer reached in and seized the object—a marijuana pipe—and asked Cleary and his passenger, Stephanie Feiler, for their driver's licenses. As Cleary handed his license to Schumacher, he reached for the door and appeared to Schumacher to be attempting to get out. Schumacher pushed the door closed and called for assistance.

When the other officers arrived, Cleary and Feiler were allowed to exit the van. Cleary was handcuffed. Without giving Cleary his *Miranda* warnings, Schumacher asked Cleary if he had any more marijuana, to which Cleary responded that there was more inside. Schumacher then looked into the van and removed a canvas-type bag with a zipper (which was broken). When he seized the bag, which was partially wrapped in clothing, he noticed what appeared to be the butt of a gun partially visible. When Schumacher took the bag to a secure location, he removed from it a .44 magnum revolver. He then put the weapon back in the bag and arrested both Cleary and Feiler.

Subsequently, Cleary, Feiler and the bag were transported to the Harbor Police facility at the airport. There, Schumacher emptied the bag without securing a warrant and seized some marijuana debris and counterfeit currency. Secret Service agents later returned to the van and searched its entire contents without a warrant, discovering more counterfeit currency.

The trial court denied Cleary's motion to suppress the counterfeit currency, and he was convicted in a stipulated facts trial.

## II. Reasonable Expectation of Privacy

Because it is clear that the fruits of the warrantless search of the canvas bag must be suppressed if there was a reasonable expectation of privacy in its contents, *United States v. Chadwick*, 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538, 549 (1977), the only issue we need to face in this case is whether such an expectation attaches to a canvas bag with a broken zipper.[1] We hold that it does.

Our starting points for analytical guidance are the Supreme Court's two major decisions on the expectation of privacy in containers of personal effects: *Chadwick, supra,* and the more recent *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

In *Chadwick,* federal narcotics agents arrested three men and seized a double-locked two hundred pound footlocker as it was being placed in the trunk of a car after a narcotics dog signaled the presence of a controlled substance inside the footlocker. An hour and a half later, agents opened the footlocker without a warrant and discovered a large amount of marijuana. In affirming the suppression of the fruits of this warrantless search, the Supreme Court noted that the protections of the fourth amendment, including the warrant requirement, were not restricted to the context of the home. Here important privacy interests were at stake:

> By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protections of the Fourth Amendment Warrant Clause.

433 U.S. at 11, 97 S.Ct. at 2483, 53 L.Ed.2d 548.

This language left *Chadwick* subject to differing interpretations. What were the

---

1. Because our holding in this case requires suppression of the counterfeit evidence that supplied the basis for Cleary's conviction, we need not examine his other arguments that were designed to reach the same result. We also note that we are only concerned here with what was found in the bag's interior and not visible from the outside. Obviously, exposed objects could be seized under the plain view doctrine. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

critical attributes imbuing this footlocker with its reasonable expectation of privacy? How important were the individualized steps cited by the Court as manifesting such an expectation, such as double-locking the trunk? Clearly, one could read *Chadwick* as requiring such subjective manifestations, and were this the intended meaning of the *Chadwick* Court, it would argue against finding such an expectation in the canvas bag found in this case.

That such a reading of *Chadwick* is incorrect, however, was made clear by the Court in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In *Sanders*, police stopped a taxi containing in its trunk a suitcase that had been described by an informant as containing marijuana. They opened the unlocked suitcase without consent or a warrant and discovered the marijuana in it. The holding in *Sanders* was that warrantless searches of *personal luggage* were unconstitutional even when the luggage was seized from an automobile. In including an unlocked suitcase within the protected ambit of personal luggage, it is clear that the Court did not rely on the types of precautions that indicate a subjective expectation of privacy (*i. e.,* double-locking) found in *Chadwick*. Rather, the critical factor relied on was the objective nature of the suitcase as personal luggage, *i. e.,* the inherent nature of the container

itself rather than the behavior of its owner. In order to understand how to make this now critical determination as to what constitutes personal luggage, we turn to the *Sanders* discussion.

In *Sanders*, as in *Chadwick*, the Court noted that "luggage is a common repository for one's personal effects, and therefore is *inevitably* associated with the expectation of privacy." 442 U.S. at 762, 99 S.Ct. at 2592, 61 L.Ed.2d at 244 (emphasis added).[2] Further, in discussing the differences between the footlocker in *Chadwick* and the suitcase in *Sanders*, the Court said:

> We do not view the differences in the sizes of the footlocker and suitcase as material here; nor did respondent's failure to lock his suitcase alter its fundamental nature as a repository for personal, private effects.

*Id.* at 762–63 n.9, 99 S.Ct. at 2592 n.9, 61 L.Ed.2d 244.

■ Given these comments, and mindful of the desirability of drawing clear lines in fourth amendment adjudication, *see id.* at 768, 99 S.Ct. at 2595, 61 L.Ed.2d 248 (Blackmun, J., dissenting),[3] we feel confident in holding, at a minimum,[4] that the term "personal luggage" encompasses those items commonly perceived as being designed for carrying and storing personal effects or pa-

2. The analysis of expectations of privacy is thus fundamentally different than when dealing with other types of containers where the expectation is not "inevitable." *See United States v. Mackey*, 626 F.2d 684, 687 (9th Cir. 1980) (noting that reasonable expectation of privacy standard is composed of both objective and subjective aspects in case analyzing expectation of privacy in a paper bag).

3. Justice Blackmun correctly anticipated the large number of cases in which courts would have to analyze different types of containers. *See* cases cited by dissent, at notes 2–5. We hope that the rule set forth here will dispose of the need for repeated detailed analysis in a significant class of cases.

4. We emphasize that this test sets forth a minimum. Other types of containers could conceiv-

ably be classified as personal luggage. *See* dissent at note 4. Still other containers may also have the requisite expectation of privacy, particularly when affirmative steps taken by their owners give rise to an implication of such a subjective expectation. Thus while in some circumstances a paper bag might not support such an implication, *see United States v. Portillo*, 633 F.2d 1313, 1320 (9th Cir. 1980); *United States v. Mackey*, 626 F.2d 684, 687 (9th Cir. 1980); *but see United States v. Ross*, 655 F.2d 1159 (D.C.Cir.1981) (en banc) (applying *Sanders* to require warrant to search closed but untaped paper bag), like the dissent we note that such a container, if secured or sealed, would seem to support such an inference.

pers and which have some sort of device to keep them closed.[5]

■ The canvas bag in the instant case would clearly meet this test and therefore qualify as personal luggage when new.[6] Therefore we next need to consider whether the changed condition of this bag, which made it impossible to close, somehow "alters its fundamental character as a repository for personal, private effects." We think it does not. Even a bag with a broken zipper retains its fundamental character as a private repository—it still gives notice to the outside world of its essentially private character.[7] Further, the dramatic consequences of an alternative approach must be considered. Holding that there is no reasonable expectation of privacy in such a bag would remove it not just from the warrant requirement in a situation in which the police already have probable cause, but completely out of the realm of *any* fourth amendment protections. *See, e. g., Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401 (1978) (citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), for the proposition that capacity to claim the protection of the fourth amendment depends upon whether the individual claiming it has a legitimate expectation of privacy in the invaded place). To hold that a mechanical breakdown creates fundamental changes with such sweeping consequences would seem a bit extreme. Finally, the clarity of our approach is an obvious asset. The alternative would seem to plunge the police (and courts) into a morass of slippery and largely irrelevant considerations.[8]

Because we conclude that Cleary had a legitimate expectation of privacy in the canvas bag, the fruits of its warrantless search must be suppressed under *Chadwick* and *Sanders*.[9]

REVERSED.

---

5. Again, we emphasize that this test sets forth a minimum. Although we do not reach the issue, it may well be that, for example, a canvas bag without a closing device could still be considered personal luggage, and thus carry an expectation of privacy in those contents not in plain view. Such a conclusion would not necessarily run afoul of the Court's cautionary note in *Sanders*, 442 U.S. at 764 n.11, 99 S.Ct. at 2593 n.11, 61 L.Ed.2d at 245 n.11, which explicitly mentioned as containers with no such expectation packages whose contents could be inferred from their outward appearance (*e. g.*, a gun case) or were subject to plain view.

6. While the bag was not in evidence before the district court, it was described in testimony. It was a canvas bag approximately 12 inches high, 8–10 inches wide and 18 inches long. As noted previously, the bag had a zipper which did not work.

7. To require further that the closing mechanism be kept in perfect working order would return the analysis to the difficult area, rejected in *Sanders* for personal luggage, of individual manifestations. Further, were we to hold to the contrary, the principle would be difficult to contain. If a broken zipper on a canvas bag eliminates an expectation of privacy, why wouldn't a broken clasp on a purse work the same fundamental change?

8. Among the inevitable issues would be the appropriate treatment of partially closable or partially closed (beyond what is in plain view) luggage. We feel the more objective analysis suggested by the Court in *Sanders* precludes the necessity of engaging in such difficult and unproductive exercises.

9. The Supreme Court's recent decisions in *New York v. Belton*, —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) and *Robbins v. California*, —— U.S. ——, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) do not compel a different result.

   *Belton* involved the permissible scope of a contemporaneous search at the scene of, and incident to, a lawful arrest. The *Belton* Court emphasized the contemporaneous nature of the search. *See* —— U.S. at ——, 101 S.Ct. at 2865, 69 L.Ed.2d at 776 ("[W]e hold that . . . a policeman . . . may, as a *contemporaneous* incident of that arrest, search the passenger compartment of that automobile." (emphasis added)); *id.* at ——, 101 S.Ct. at 2864, 69 L.Ed.2d at 775 ("The search of the respondent's jacket followed immediately upon that arrest."). The *Belton* Court distinguished *Chadwick* because, in *Chadwick*, " 'the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or justified by any other exigency.' " *Id.* at ——, 101 S.Ct. at 2865, 69 L.Ed.2d at 776 (quoting *Chadwick*, 433 U.S. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 551). This case, like *Chadwick*, involves a search removed

EUGENE A. WRIGHT, Circuit Judge, dissenting:

With due respect for the views of my colleagues, I dissent.

The key issue remains whether Cleary had a reasonable expectation of privacy in the contents of an open canvas bag. I conclude he did not.

Fourth Amendment protection against warrantless searches applies only if Cleary had a subjective expectation of privacy that society is prepared to recognize as reasonable and legitimate. *Rakas v. Illinois*, 439 U.S. 128, 143–44 n.12, 99 S.Ct. 421, 430–31 n.12, 58 L.Ed.2d 387 (1978). In considering reasonableness, a court must examine

> whether a person invoking the protection of the Fourth Amendment took normal precautions to maintain his privacy—that is, precautions customarily taken by those seeking privacy.

*Id.* at 152, 99 S.Ct. at 435 (Powell, J., concurring).

A container that does not demonstrate this expectation may be searched with probable cause when it is lawfully obtained by the police. *United States v. Mannino*, 635 F.2d 110, 113 (2d Cir. 1980). Otherwise, a warrantless search is permissible only if a recognized exception to the warrant requirement applies. *Id.*

Cleary's container was an open canvas bag with a broken zipper. It was approximately 12 inches high, 8 to 10 inches wide, and 18 inches long.[1] The butt of a handgun was protruding from the top.

In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Supreme Court held that Chadwick's use of a double-locked footlocker "manifested an expectation that the contents would remain free from public examination." *Id.* at 11, 97 S.Ct. at 2483. Absent exigency, search of it was unreasonable without a warrant.

In *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the court found a manifestation of an expectation of privacy in an unlocked suitcase because it was traditionally a repository of personal items. The court recognized, however, that

> some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant.

*Id.* at 764–65 n.13, 99 S.Ct. at 2593–94 n.13.

In *Robbins v. California*, —— U.S. ——, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), the conscious manifestation of an expectation of privacy proposition received majority support. However, there was disagreement

---

from the arrest both geographically and temporally, and hence cannot be justified as incident to that arrest.

The government also argues that the stationhouse search was merely the completion of the initial search incident to the arrest and could still be justified on that basis. The facts negate this argument, whatever its legal merit. The officer was very careful while testifying to emphasize that he only removed the gun, the butt of which was in plain view, and checked to see if it was loaded or empty. He then replaced the gun without any examination of the interior contents of the bag. Thus there was no search of the bag at the scene of the arrest. We therefore need not address whether the "incident to arrest" exception, designed to protect police officers and prevent destruction of evidence by arrestees, *see, e. g., Belton*, —— U.S. at ——, 101 S.Ct. at 2862–63, 69 L.Ed.2d at 773, would support "continuation" searches re-

moved in time and place from the scene of the arrest where the destruction and protection factors are absent.

The *Robbins* decision is also compatible with our result here. There the Court explained the negative implications of note 13 of the *Sanders* opinion, *see* note 5 *supra*, as being that "unless the container is such that its contents may be said to be in plain view, those contents are fully protected by the Fourth Amendment." —— U.S. at ——, 101 S.Ct. at 2846, 69 L.Ed.2d at 751. As noted in note 1, *supra*, we are only concerned here with objects not visible from the exterior of the bag and hence not subject to a plain view analysis.

1. The bag was not placed in evidence. The description of it is taken from the officer's testimony.

about how such a "manifestation" is to be gauged. The plurality declared a "bright-line" rule that the use of a closed, opaque container indicates in every case a manifestation of an expectation of privacy. However, it recognized the two exceptions already described in *Sanders*. As a legal matter, an expectation of privacy would not be deemed manifested where (1) the closed opaque container is suggestive of its contents, and (2) the container is open. Generally, the court said, the two exceptions describe occasions when the contents of the container have been left in "plain view." *Id.* at ———, 101 S.Ct. at 2846.[2]

Justice Powell concurred in the result but disagreed with the "bright-line" rule. He suggested that the manifestation of an expectation of privacy should be judged on a case-by-case basis, taking into consideration the container's size, shape, material and condition, the context of its discovery, and whether its possessor has taken some significant precaution, such as locking, sealing, or binding to indicate a desire to prevent its contents from being displayed upon simple mischance. ——— n.3, 101 S.Ct. at 2850 n.3 (Powell, J., concurring).

Applying Justice Powell's test to this case I do not find that Cleary manifested an

expectation of privacy. His bag was not closed, sealed, secured, or secreted so as to signal any "significant precaution ... to prevent the contents from being displayed upon simple mischance." *Id.*[3]

Moreover, Cleary's bag comes within both *Sanders* exceptions. I see no difference between a canvas bag with a protruding gun and a gun case. Both suggest the presence of one or more guns. If the warrantless search of the gun case for guns is proper, so is the warrantless search of the canvas bag.

Because the bag was open, it also comes within the second *Sanders* exception. To read *Robbins* as saying that the second *Sanders* exception requires any more than that the container be open would be contrary to the overwhelming weight of precedent since *Sanders*. With one exception, I have found no federal or state cases decided after *Sanders* that hold a reasonable expectation of privacy attaches to an open container.

The vast majority of cases finding a reasonable expectation of privacy involve containers that are closed,[4] zipped shut,[5] taped shut,[6] or otherwise sealed or secured.[7]

---

**2.** The majority's reliance on the *Robbins* plain view language, *see* footnote 9 *ante,* seems to suggest a visibility test for which I do not believe there is support in *Robbins.* Such a test would mean that the contents of even an open, neutral container are protected so long as they are not immediately visible to an officer. Neither this court nor the Supreme Court has given "plain view" so restrictive a meaning. *See Coolidge v. New Hampshire,* 403 U.S. 433, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Wheeler,* 641 F.2d 1321 (1981). Certainly the result cannot turn upon the accidental positioning of the officer either to see or not see the contents of an open, nonsuggestive container. Likewise, the mere use of some neutral container does not denote an expectation of privacy. The test of *Robbins* must be whether the use of the container goes beyond mere convenience in transport of contents to the conscious hiding of the contents from public view.

**3.** The majority recognizes a protected expectation of privacy in this bag because it concludes that the bag is a form of "personal luggage"

within the meaning of *Sanders.* The majority defines "personal luggage" as items "commonly perceived as being designed for" carrying personal effects and which have a closing device. Without further discussion, it holds that the canvas bag meets this test.

This test is passe in light of *Robbins, supra.* There the Supreme Court made clear that the characterization of the container as personal luggage is irrelevant. ———, 101 S.Ct. at 2845–46.

**4.** *See United States v. Ross,* 655 F.2d 1159 (D.C.Cir., 1981) (en banc) (closed paper bag); *United States v. Benson,* 631 F.2d 1336, 1337 (8th Cir. 1980) (closed but unlocked leather tote bag); *United States v. Bella,* 605 F.2d 160 (5th Cir. 1979) (closed guitar case); *United States v. Calandrella,* 605 F.2d 236, 247 (6th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979) (closed briefcase); *United States v. Gooch,* 603

**5.** See note 5 on page 1308.
**6.** See note 6 on page 1308.
**7.** See note 7 on page 1308.

By contrast, an open flight bag,[8] open paper bags,[9] closed but unsealed paper or plastic bags,[10] and other containers not normally used to transport personal items,[11]

F.2d 122, 125 (10th Cir. 1979) (closed briefcase); *United States v. Meier*, 602 F.2d 253, 255 (10th Cir. 1979) (closed but unlocked backpack); *United States v. Johnson*, 588 F.2d 147, 151–52 (5th Cir. 1979) (closed duffel bag); *United States v. Schleis*, 582 F.2d 1166, 1170 (8th Cir. 1978) (closed, combination locked briefcase); *Matter of B.K.C.*, 413 A.2d 894 (D.C. 1980) (closed but unlocked briefcase); *State v. Filipi*, 297 N.W.2d 275 (Minn. 1980) (closed duffel bag); *State v. Daniel*, 589 P.2d 408 (Alaska 1979) (closed but unlatched briefcase); *People v. Dalton*, 24 Cal.3d 850, 157 Cal.Rptr. 497, 598 P.2d 467 (1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980) (closed metal box in trunk); *State v. Delong*, 602 P.2d 665 (Or. 1979) (closed camera case in trunk); *State v. Groda*, 285 Or. 321, 591 P.2d 1354 (1979) (closed briefcase in trunk). *But see Liles v. State*, 375 So.2d 1094 (Fla.App. 1979) (warrantless search of partially open leather or vinyl satchel unconstitutional because contents were not in plain view).

5. *See United States v. Ross, supra*, note 4 (zippered leather pouch); *United States v. Rigales*, 630 F.2d 364, 366 (5th Cir. 1980) (zippered leather case); *United States v. Garcia*, 605 F.2d 349, 352 (7th Cir. 1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2966, 64 L.Ed.2d 841 (1980) (zippered but unlocked suitcases; warrantless search permissible because of exigent circumstances); *United States v. Haley*, 581 F.2d 723, 725 (8th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 681 (1978) (zippered leather briefcase; warrantless search permissible because of exigent circumstances); *Commonwealth v. Timko*, 417 A.2d 620 (Pa. 1980) (zippered valise); *People v. Minjares*, 24 Cal.3d 410, 153 Cal.Rptr. 224, 591 P.2d 514, *cert. denied*, 444 U.S. 887, 100 S.Ct. 181, 62 L.Ed.2d 117 (1979) (zippered tote bag); *State v. Hassapelis*, 404 A.2d 232 (Me. 1979) (zippered gym bag). *But see United States v. Markland*, 635 F.2d 174, 177 (2d Cir. 1980) (warrantless search of zippered vinyl Schlitz beverage bag permissible because bag not normally used for transporting personal items and no objective step taken to signal privacy; zipping shut not enough).

6. *See United States v. Dien*, 609 F.2d 1038, 1045 (2d Cir. 1979), *adhered to on rehearing*, 615 F.2d 10 (2d Cir. 1980) (taped cardboard box behind the driver's seat inside a van, the windows of which had been painted over); *United States v. O'Campo*, 492 F.Supp. 1211 (E.D.N.Y. 1980) (taped cardboard box in trunk); *United States v. Rivera*, 486 F.Supp. 1025 (N.D.Tex. 1980) (securely taped plastic garbage bags); *Cooper v. Commonwealth*, 577 S.W.2d 34 (Ky. 1979) (heavily taped razor case under front seat; warrantless search permissible because of exigent circumstances and lesser intrusion than impoundment). *But see United States v. Blair*, 493 F.Supp. 398 (D.Md. 1980) (warrantless search of taped cardboard boxes permissible because boxes are not repositories of personal effects).

7. *See Walters v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (securely wrapped and sealed cartons); *United States v. Presler*, 610 F.2d 1206, 1212 (4th Cir. 1979) (securely locked briefcases); *State v. Blais*, 416 A.2d 1253 (Me. 1980) (rolled up, opaque plastic bag in trunk); *Liichow v. State*, 419 A.2d 1041, 1042 (Md. 1980) (large, semi-opaque plastic bag "crumpled together on top of the open end," wrapped around defendant's arm, and being held by his other arm); *Pirner v. State*, 411 A.2d 135 (Md. 1980) (duffle bag under carpet under passenger seat); *State v. White*, 94 N.M. 687, 615 P.2d 1004 (1980) (sealed cardboard boxes and onion or sugar sacks tied at the top in the trunk); *State v. Grundy*, 25 Wash.App. 411, 607 P.2d 1235 (1980) (padlocked footlocker); *State v. Schrier*, 283 N.W.2d 338 (Iowa 1979) (latched knapsack; warrantless search permissible after seeing contents when pushed flap aside without unlatching).

8. *See O'Campo, supra* note 6 (warrantless search of open and unsecured flight bag permissible).

9. *See United States v. Honigman*, 633 F.2d 1336 (9th Cir. 1980) (open Safeway paper bag); *United States v. Mannino*, 635 F.2d 110 (2d Cir. 1980) (open white plastic bag).

10. *See United States v. Foskey*, 636 F.2d 517 (D.C. Cir. 1980) (brown paper bag fastened around the neck of a gas pipe in an automobile); *United States v. Brown*, 635 F.2d 1207 (6th Cir. 1980) (closed but unsealed paper bag); *United States v. Portillo*, 633 F.2d 1313, 1315–1316 (9th Cir. 1980) (closed paper bag). *But see United States v. Ross, supra* note 4 (expectation of privacy attaches to closed but unsealed paper bag).

11. *See Vogel v. State*, No. 3, slip op. (Ct. App.Ala., October 28, 1980) (warrantless search of army-type duffel bags stuffed with brick-shaped objects permissible because contraband obvious); *Burkett v. State*, 607 S.W.2d 399 (Ark. 1980) (no expectation of privacy in burlap bags in locked trunk because they are not repositories of personal effects); *Flynn v. State*, 374 So.2d 1041 (Fla.App. 1979) (placing items in black plastic garbage bags fails to manifest expectation of privacy).

are not found to be attended by a reasonable expectation of privacy.

Finally, whatever expectation of privacy Cleary may have had in his canvas bag, if incident to arrest, the search may have been reasonable. *United States v. Belton,* —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), announces a "bright-line" rule justified by the general confusion among courts and law enforcement officers regarding the scope of search incident to arrest in automobile cases.

The "workable definition" of that scope now is that the passenger compartment and any containers within, whether open or closed, may be searched without a warrant. The rule applies even where the defendant is not in the compartment or where the searched containers are not immediately accessible or beyond reach—*i. e.,* the traditional *Chimel* rationale of officer protection does not necessarily underlie the new rule. Nor does the Court specify how long after arrest such a search remains valid.

In Cleary's case, the bag was found between the two passenger seats of his van. Though the gun was withdrawn within the proximity of the van and just before Cleary's formal arrest, the rest of the bag's contents were not withdrawn until later. If we reached that issue, I would remand the case for a determination whether the subsequent search was incident to arrest in light of *Belton.* It is unnecessary to reach that issue, however, because Cleary had no expectation of privacy.

I would affirm Cleary's conviction.