THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MICHAEL MANZI, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MIGUEL EMERIC, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CLEMENT DELVITT, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DANIEL ESPINET, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GILBERT VALEZ, Appellant.

First Department, April 9, 1964.

*Irving Levine* of counsel (*Levine & Cowen,* attorneys), for appellants.

*Alan Frederick Leibowitz* of counsel (*H. Richard Uviller* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

BREITEL, J. The question is whether the police conducted an illegal search and seizure when they took articles to a police station obtained by them from a parked station wagon. They had just witnessed the smashing of its door window and the evident attempted theft of the articles. Defendants consist of the owner of the station wagon and his companions. They had participated in a previous larceny of some of the articles and then had placed them in the station wagon, before the second group of thieves came upon the scene.

Defendants appeal from judgments convicting each of them, after pleas of guilty, of petit larceny (Penal Law, §§ 1298, 1299). Their appeals bring up for review the previous denial, after hearing, of their motions to suppress the evidentiary use of the alleged fruits of the larceny on the ground that they were obtained by the police pursuant to an illegal search and seizure (Code Crim. Pro., § 813-c).

Since the police were privileged to remove the articles from the vehicle, now unsecured, in order to safeguard them both for the owner and for use as evidence against the would-be thieves, there was no illegal search and seizure.

Since about 9:15 P.M., on the night in question, three detectives had been following three men, who suspiciously, were inspecting parked automobiles. At about 10:00 P.M., at 46th Street and Vanderbilt Avenue in Manhattan, one of the men stopped by a two-door Ford station wagon, looked in, and then stepped back and kicked in the door window, leaned over the back of the seat, and started to explore the property in the interior.

The three men were apprehended immediately and placed under arrest.* The detectives examined the interior of the vehicle and found, in back of the seat partially covered by a blanket, two brass stands with plastic wheels, a case of liquor, two portable television sets, and miscellaneous canned foods. These articles were removed. A uniformed policeman was left by the automobile and instructed to tell the owner to call for his property at the police station.

The detective who testified stated the property was taken to safeguard it, to use as evidence against the three men who were charged with attempted grand larceny, and to ensure

---

* These three men were prosecuted but they were ultimately discharged on their own recognizance.

that the owner would be available as complainant in court the next day. He said he could not be sure the uniformed officer would be able to remain with the automobile under all circumstances.

At the station, the witness learned from the Bureau of Motor Vehicles that Delvitt owned the car. He telephoned Delvitt's wife who said she did not know where he was. Then, under the lights of the police station, the witness noticed markings on the liquor bottles which made him conclude that they came from one of the many hotels in the area where the automobile was parked.

Delvitt arrived at the police station at about 4:00 A.M., presumably after talking to the policeman guarding the automobile. He admitted he stole the property, and as a result of further questioning, the other defendants were later arrested. Investigation disclosed that the liquor and television sets had been stolen from a hotel. This led to the indictment of defendants.

The described activity of the police constitutes no trespass or illegal invasion of privacy. The vehicle had become unsecured and the articles now physically as well as visually exposed to still another attempted theft. Failure to protect the property would have subjected the police to ridicule, and properly so. They should and did act to safeguard the articles for their owner, whoever that might be. That being so, there was no actionable wrong (see *People* v. *Roberts*, 47 Cal. 2d 374; Restatement, Torts, §§ 197, 271; Restatement, Torts 2d, Tentative Draft No. 2, § 197; Prosser, Torts [2d ed.], § 22; cf. *Foster* v. *United States*, 296 F. 2d 65, 67 [C. A. 5th]). As already stated, the articles were taken by police from an opened automobile parked on a busy public street. However, any person would be privileged to protect this property, if necessary, even if it had been on Delvitt's land. In the words of Restatement (Torts, § 197): " One is privileged to enter land * * * in a reasonable manner, for the purpose of protecting * * * chattels from * * * serious harm, if such conduct is necessary or reasonably appears to the actor to be necessary, unless the actor knows that the person for whose benefit the entry is made is unwilling that the actor shall take such protective action." The " actors " here, being policemen, are certainly privileged, since they are expected to protect property as well as the citizenry (see New York City Charter, § 435; cf. *Marshall* v. *City of Buffalo*, 50 App. Div. 149, 152, 155–156; 176 N. Y. 545; *Schuster* v. *City of New York*, 5 N Y 2d 75). Of course, they may act reasonably to protect from crime and need not

await its consummation (see *People* v. *Nixon*, 248 N. Y. 182, 188; *People* v. *Levner*, 30 N. Y. S. 2d 487, 492). This, of course, is not to say that they, without more, would be liable to the owner if they did not take such precautions.

The police were also justified under the circumstances to take the property and safeguard it for use as evidence against the three would-be thieves, since the public has an interest in effective law enforcement. Indeed, if necessary, private property may be used reasonably to this end (Restatement, Torts, § 271): "One who in the discharge of a duty or authority created by law to preserve the public safety, health or peace intentionally dispossesses another of a chattel is not liable to the other for the dispossession if his act is reasonably necessary to the performance of the duty or the exercise of the authority." It is pursuant to this very principle that a police officer may commandeer a private automobile (*Matter of Babington* v. *Yellow Taxi Corp.*, 250 N. Y. 14; *Berger* v. *City of New York*, 260 App. Div. 402, 403, affd. 285 N. Y. 723; Restatement, Torts, § 271, Illustration 1). It surely follows that property may be protected and used for evidence, if necessary, under reasonable circumstances, then apparent and not concerned with constitutional limitations designed to protect not the owner but the putative thieves.

Thus, since the property was already rightfully in the possession of the police, it could not be "seized" later, in either a physical or even a legalistic sense, simply because the police then learned of defendants' culpability and it was decided to use the evidence against them. Also, it could never be intelligently contended that Delvitt's automobile was "searched" at that later time.

Accordingly, the judgments appealed from should be affirmed.

BOTEIN, P. J., VALENTE, EAGER and STEUER, JJ., concur.

Judgments of conviction unanimously affirmed.