[No. 39817.   Department One.   March 14, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT MONTAGUE, *Appellant.**

*Reported in 438 P.2d 571.

*James Arneil* and *Edward T. Engst,* for appellant (appointed counsel for appeal).

*Robert Montague,* pro se.

*E. R. Whitmore, Jr.* and *David J. Whitmore,* for respondent.

WARD, J.†—This is an appeal from the judgment entered pursuant to the verdict of a jury finding the defendant guilty of the crime of unlawful possession of marijuana, a narcotic drug. Defendant's counsel makes two assignments of error in this court. In his first assignment of error, he claims that defendant's automobile was illegally searched, and that the fruit of the illegal search, the marijuana discovered therein, was seized and improperly admitted into evidence during the trial. His second assignment of error claims prejudicial misconduct on the part of the prosecuting attorney during the trial of the case.

Facts pertinent to the first assignment of error are as follows:

At about 5:30 a.m. on January 18, 1967, Officer Clifford Hahn of the Wenatchee police department observed the defendant, Robert Montague, driving on Wenatchee Avenue with only one headlight on his motor vehicle. Upon being stopped and questioned by Officer Hahn, the defend-

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

ant was unable to produce either a valid operator's license or a registration for the car. The defendant was taken to the police station and an arrest citation was issued charging him with two violations, namely, defective equipment and no operator's license. He was unable to raise $34 bail, and after some discussion it was agreed that he would be released on his personal recognizance. Defendant then asked Officer Hahn to drive him back to his car, which request was granted, but, while enroute, Officer Hahn received a call on his car radio informing him that there was a warrant on file for defendant's arrest on account of his failure to appear in police court on a prior traffic citation. The officer immediately returned defendant to the police station, and advised him that he would be released only upon furnishing bail. The police officer left the defendant at the police station and returned to the car for the dual purpose of checking the car registration and preparing the car for impoundment. Police procedure in Wenatchee required that, whenever a driver of an automobile was arrested and detained, his automobile would be removed from the street and placed in a public garage; that, preparatory to impoundment, the car would be searched for valuables; and, if any valuables were found, they would be taken to the police station for safekeeping, where they would be itemized and listed on a "property card." While engaged in making such search for valuables, Officer Hahn examined a brown paper bag on the floor of the car and found that it contained eight small plastic bags filled with the material which was later chemically analyzed and determined to be marijuana.

The defendant claims that this constituted an illegal search of his car, and that the trial court erred in denying his motion to suppress the marijuana as evidence.

The defendant first claims that Officer Hahn left the police station to return to the car while the defendant was making a telephone call to try to arrange bail, and that the officer, therefore, made his search without knowledge that it would be necessary to impound the car. The evidence, however, would warrant a contrary inference. After Officer

Hahn returned to the car, he was in communication with the desk sergeant at the police station by car radio, and, while the evidence is silent with respect to whether they discussed the defendant's ability to obtain bail, it is evident that Officer Hahn knew that the car would have to be impounded because he asked the desk sergeant to call the garage to send a wrecker to tow the car in.

The primary issue in this case, therefore, is whether the search of an automobile is illegal when a police officer, following the routine inventory procedure prescribed by the police department, makes a search of an automobile which will have to be impounded and removed from the streets on account of the detention of the owner.

So far as we can determine, this direct issue has been before this court on only one prior occasion. That was in *State v. Olsen,* 43 Wn.2d 726, 263 P.2d 824 (1953). The legality of search and seizure in that case was considered by the court under facts quite comparable to those in the instant case. There, as in the instant case, a traffic violation, for which the defendant was arrested, was committed in the presence of a police officer. Defendant was placed in jail and booked for negligent driving. While the contents of his car were being placed in custody for safekeeping by police officers, this being a routine procedure, the police discovered a pistol, burglary tools, a police badge, and a sap. The court held that these articles were properly admissible in evidence on the trial of felony charges subsequently filed against the defendant for unlawfully carrying a pistol in a vehicle without a license, and for unlawfully having burglary tools in his possession. In the 14 years that have elapsed subsequent to our decision in that case, we note that the identical search and seizure question, which was before the court in that case, has been considered by the appellate courts of several other states, and also by the federal courts. The question has been arising with increasing frequency during the past few years.

The decisions which we have been able to find have all reached the same conclusion which we reached in *State v. Olsen, supra,* when the facts have been comparable. What

is now frequently referred to as the inventory rule will not apply, however, and evidence of crime discovered during the taking of the inventory will be suppressed as evidence, unless there first be a lawful arrest. *Miller v. State,* 137 So. 2d 21 (Fla. 1962). Also, in *Williams v. United States,* 170 A.2d 233 (D.C. Mun. App. 1961), the court refused to permit evidence of crime discovered during the taking of the inventory to be used in evidence following a valid arrest, where the court could find no reasonable grounds for the impoundment of the vehicle. Neither would this court have any hesitancy in suppressing evidence of crime found during the taking of the inventory, if we found that either the arrest or the impoundment of the vehicle was resorted to as a device and pretext for making a general exploratory search of the car without a search warrant. *State v. Michaels,* 60 Wn.2d 638, 374 P.2d 989 (1962); *People v. Garrison,* 189 Cal. App. 2d 549, 11 Cal. Rptr. 398 (1961).

█ When, however, the facts indicate a lawful arrest, followed by an inventory of the contents of the automobile preparatory to or following the impoundment of the car, and there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory search for the purpose of finding evidence of crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person's detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed.

This determination finds support not only in our prior decision, *State v. Olsen, supra,* but also in the reasoning set out in *State v. Wade,* 190 Kan. 624, 376 P.2d 915 (1962); *St. Clair v. State,* 1 Md. App. 605, 232 A.2d 565 (1967); *People v. Manzi,* 21 App. Div. 2d 57, 248 N.Y.S.2d 306 (1964), *aff'g* 38 Misc. 2d 114, 237 N.Y.S.2d 738 (1963); *People v. Simpson,* 170 Cal. App. 2d 524, 339 P.2d 156 (1959); *People v. Ortiz,* 147 Cal. App. 2d 248, 305 P.2d 145 (1956); *People v. Odegard,* 203 Cal. App. 2d 427, 21 Cal. Rptr. 515 (1962); *People*

*v. Garcia,* 214 Cal. App. 2d 681, 29 Cal. Rptr. 609 (1963); *People v. Prochnau,* 251 Cal. App. 2d 22, 59 Cal. Rptr. 265 (1967); *Heffley v. State,* 83 Nev. 100, 423 P.2d 666 (1967); *Cotton v. United States,* 371 F.2d 385 (9th Cir. 1967).

In *Cooper v. California,* 386 U.S. 58, 17 L. Ed. 2d 730, 87 Sup. Ct. 788 (1967), the defendant was lawfully arrested and his car was impounded under the provisions of California Health and Safety Code § 11611, authorizing a state officer making an arrest for violation of the narcotic laws to seize a vehicle used in the unlawful transportation of any narcotic, and to hold the car as evidence until a forfeiture be declared or a release of the car ordered. Pursuant to this statute, the accused person's car was impounded and, a week later, was searched. A majority of the United States Supreme Court held that such search was reasonable and lawful. The majority in its opinion said, at 61:

> But the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.

Apropos to the reasonableness of the search, the Supreme Court said, at 61:

> The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *United States v. Rabinowitz,* 339 U.S. 56, 66 [94 L. Ed. 653, 70 Sup. Ct. 430].

In *Cooper,* the impoundment of the car was expressly authorized under the factual situation before the court by the terms of the California statute. We do not, however, deem the existence of such a statute the indispensable nexus with which to connect the test of reasonableness of

the impoundment of the car and its subsequent search to the factual situation in the case. This same question was explored in *St. Clair v. State, supra*. There was no Maryland statute or written regulation pursuant to which the police officers in that case impounded and searched the car. The accused person, however, was lawfully arrested and was unable to furnish bail. The car was, therefore, impounded, its contents were inventoried, and placed in the custody of the sheriff "because we were responsible for them." The court said, at 1 Md. App. 613,-16:

> While *Cooper* thus makes it plain that a warrantless search of a vehicle may be reasonable without being incident to an arrest, unlike the factual situation in that case, appellant's car was not required to be seized by State law at the time of his arrest. Neither did it constitute evidence of any crime, nor was it subject to a statutory forfeiture proceeding. That these factors need not necessarily be present to authorize a warrantless search of a motor vehicle properly in police custody where the circumstances show the search to be otherwise reasonable is nevertheless abundantly clear from the decisions. As the court observed in one such case, People v. Prochnau, 59 Cal. Rptr. 265 (Cal. Dist. Ct. App. 1967): "The core of the matter is not whether the police officers acted without express authority in State law in impounding the car; it is whether its subsequent conduct was reasonable in the light of the constitutional guarantees with respect to the matter of search and seizure."

Thus, in *Heffley v. State*, 423 P.2d 666 (Nev. 1967), Heffley was arrested in his car in which he had a large number of guns in plain view on the back seat. Charged with unlawful possession of a pistol, he was taken to the police station, and thereafter, his vehicle was impounded by police, searched, and stolen articles discovered therein. The court held in effect that while the search could not be justified as incident to the arrest in light of *Preston,* nevertheless it was not constitutionally unreasonable under the circumstances. Noting that the police "had the responsibility to inventory the property, for if it later developed that Heffley owned the guns and the automobile they would be responsible for their safekeeping," the court stated:

> "* * * If the search is for the purposes of inventory of personal effects and not exploratory, articles

found as a result which supply the foundation for a reasonable suspicion on the part of the police are not subject to unlawful search and seizure. This is so because the police are in a place where they have a right and obligation to be, as in this case, when they find the objects of seizure.

\* \* \*

"The police officer, when there is just cause, has a duty not only to impound a car from the public highway for its own protection, but also to inventory the contents so that they may be safeguarded for the owner. Such practice is deemed necessary to defeat dishonest claims of theft of the car's contents and to protect the temporary storage bailee against false charges. \* \* \* If, however, the policing conduct indicates that the intention is exploratory rather than inventory the fruits of that search are forbidden. \* \* \* Unfortunately, distinguishing inventory from exploration may prove to be ambitious and unprecise. We can only say that each case must be determined upon its own facts and circumstances.

\* \* \*

"In this case from the time of seizure of the car until the inventory at the police station, the vehicle was in the lawful custody of the officers. In these circumstances the search without a warrant of defendant's automobile could not be said to be 'unreasonable.' It is only unreasonable searches that are prohibited by the Constitution. *United States v. Rabinowitz,* 339 U.S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950)."

In *Cotton v. United States,* 371 F.2d 385 (9th Cir. 1967), Cotton was accosted by police in an alley late at night while in his car with the lights out. He was arrested for disturbing "private places," and removed from the scene of the arrest, after which his car was towed away to the police impound. As the arresting officer felt that "after arresting the man, I am responsible for the vehicle and the property in it," the car was entered and examined by police, it thereby being ascertained that the car had been stolen. In the course of its opinion, in which it found no merit to appellant's contention that the search of his vehicle was unconstitutional under the Fourth Amendment, the court said:

" \* \* \* Cotton having been validly arrested and taken to the police station, the officer would have been

derelict in his duty if he had left the car unattended in a dark alley in the middle of the night. The police have as much a duty to protect the property of a suspect as they have to protect the property of the rest of us, and that is what they did in this case by towing the car to the police impound. They also had a duty to keep a record of the property that they had impounded so that it could be returned to the suspect or to its owner in due course. For reasons stated below, we do not think that the mere opening of the door of the car for the purpose of making such a record was, under the circumstances, a search, but if it was, the circumstances under which it was done make that search an entirely reasonable one. Cf. *Boyden v. United States*, 9 Cir., 1966, 363 F.2d 551. The Constitution prohibits only unreasonable searches and seizures. *United States v. Rabinowitz*, 1950, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L. Ed. 653."

It is only unreasonable searches which are prohibited by the Fourth Amendment. The determinative test, therefore, of the legality of the search is its reasonableness under all of the circumstances. What might be deemed a reasonable search of a motor vehicle without a warrant, might not apply to the search of a home, a store, or other similar property. It may be admitted that, in some cases, the court will be faced with difficulty in distinguishing between a reasonable and lawful inventory procedure and an unauthorized exploratory search. *Heffley v. State, supra.* This is a factual determination which must be made by the court so as to separate that which is reasonable from that which is unreasonable.

Our review of the record in this case does not cause us to conclude that the trial court disregarded the defendant's rights under the Fourth Amendment in admitting in evidence the marijuana which was found in the defendant's car while it was being searched preparatory to impoundment.

There was evidence which could induce the trial court to believe that the police were acting in good faith in removing the defendant's car from the street, and that the search was made for the dual purpose of protecting its contents

from undue risk during storage and protecting the police and the bailee from false claims of loss or theft. The record indicates that the police were attempting to deal fairly with the defendant on his first arrest. When he was unable to raise bail in the sum of $34, it was agreed that he could be released upon his personal recognizance. He was, as a matter of courtesy, furnished transportation from the police department back to his car. The trial court could properly consider these circumstances in determining whether the impoundment of the car was merely a device resorted to by the police to make an exploratory search without a warrant.

■ The fact that evidence of a crime, separate and distinct from that for which defendant was initially arrested, was discovered during the course of a search· is of no avail to the defendant. Such search, if lawful, does not render inadmissible the evidence of such unrelated crime in a subsequent prosecution therefor. *People v. Ortiz, supra; St. Clair v. State, supra; Harris v. United States*, 331 U. S. 145, 91 L. Ed. 1399, 67 Sup. Ct. 1098 (1947).

■ The defendant's second assignment of error is based upon prejudicial misconduct on the part of the prosecuting attorney during the trial. The defendant had traveled from Seattle to Wenatchee with a young woman during the hours immediately preceding his arrest. The state called this young woman as a witness and she testified to certain conduct and statements made by the defendant during the trip. The only part of the evidence which we find to be improperly presented to the jury was her testimony that the defendant had stopped alongside the road for more than an hour and that his conduct during this stop was ungentlemanly. On oral argument, the prosecuting attorney frankly admitted the impropriety of this evidence, and he had no excuse for presenting this evidence to the jury, except "to win." We cannot approve the conduct of the prosecuting attorney, but under the facts of this case, we cannot find that the results of the impropriety were so prejudicial as to require a new trial. None of the evidence showing the defendant's illegal possession of marijuana

was in any way controverted except by the defendant's plea of not guilty. He did not take the witness stand himself, and he presented no evidence except by one witness who testified to the time a telephone call was received. The jury's verdict, therefore, could not have been influenced in any way by the prosecuting attorney's conduct.

The defendant has filed a pro se brief in addition to the brief of his counsel. We have carefully considered the pro se brief. Some of the assignments of error therein are identical with those in his counsel's brief and have been already discussed. Some are without any basis of fact in the record, such as his claim that the prosecuting attorney commented on his failure to take the witness stand in his argument to the jury, and that the defendant was prejudiced by adverse publicity, requiring a change of venue in order to insure a fair trial.

█ He claims that there was no evidence in the case that the material found by Officer Hahn in the plastic bags was sufficiently identified as marijuana. The record shows that George G. Ishii, a graduate chemist, employed as criminologist in the crime laboratory of the Seattle police department, examined the material both by high-power microscope and by chemical analysis and determined that the plant growth which he examined was marijuana, and so testified. It is the defendant's position that RCW 69.33.220 (13) (formerly RCW 69.33.010(13)), excludes the stems of the plant from the definition of cannabis sativa, the scientific name of the plant commonly referred to as marijuana' and that the failure of the witness to state that it was not the stem of the plant which he examined, made his identification insufficient. However, the expert testified that the material which he examined included "stems, leaf fragments and seeds." This same issue was considered by this court in *State v. Garcia,* 69 Wn.2d 546, 558 n.2, 419 P.2d 121 (1966), and the court said that:

> If *any* parts of the contents of each can were narcotic portions of the plant Cannabis Sativa, the sale of the contents is a sale of narcotics. It appears to be of no consequence in the statutory definition of narcotic, for

the purposes of this criminal statute, that other parts of the contents may be non-narcotic portions of the plant. It seems plausible that many sales may be of packages containing a mixture of narcotic and non-narcotic portions of the plant.

The state made a prima facie case that the material in the plastic bags included marijuana. This was sufficient.

The defendant states that he was not served with a warrant for arrest until 16 days after his arrest, and there was a delay of 24 days in his arraignment. The defendant was arrested by the Wenatchee police for defective motor equipment and no valid operator's license on January 18, 1967. He was rearrested on the same day on a bench warrant for failure to appear in police court on a prior traffic offense. The information charging him with illegal possession of marijuana was filed on January 19, 1967. He was served with a warrant of arrest on the later charge on February 2, 1967. He was arraigned on that charge on February 10, 1967. The record is silent with respect to the disposition of the traffic charges, and the length of his detention on these charges. We do not find any constitutional rights of the defendant impaired as a result of either the delay in the service of the warrant for arrest on the felony charge or the delay in his arraignment on that charge. *State v. Lane,* 37 Wn.2d 145, 222 P.2d 394 (1950); *State v. Manning,* 57 Wn.2d 327, 356 P.2d 721 (1960); *State v. Thompson,* 58 Wn.2d 598, 364 P.2d 527 (1961); *Draper v. Rhay,* 242 F. Supp. 829 (E. D. Wash. 1964).

We have considered the remaining assignments of error in defendant's pro se brief and find no merit in any of them.

The defendant has also presented to this court a petition for a writ of habeas corpus. It is claimed that the fixing of bail by the trial court in the sum of $5,000 pending his appeal was violative of his rights under the Eighth Amendment. We do not deem such bail excessive.

The judgment will be affirmed, and the petition for the writ will be denied.

FINLEY, C. J., WEAVER, ROSELLINI, and McGOVERN, JJ., concur.

May 10, 1968. Petition for rehearing denied.