**UNITED STATES of America,
Appellant,**

v.

**Roy Lee MARKLAND, Jr., Appellee.**

**No. 296, Docket 80–1259.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 7, 1980.

Decided Dec. 8, 1980.

Thomas S. Luby, Asst. U. S. Atty., Anthony Poole and Carl E. Taylor, Law Student interns, New Haven, Conn. (Richard Blumenthal, U. S. Atty. for the District of Connecticut, New Haven, Conn., of counsel), for appellant.

Kevin J. Acton, Asst. Federal Public Defender, District of Connecticut, New Haven, Conn., for appellee.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND, Circuit Judge, and BLUMENFELD, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Roy Lee Markland, a United States Postal Service supervisor, was arrested on August 11, 1979, following the discovery of two undelivered parcels of mail in a package belonging to him. A grand jury, sitting in the United States District Court of the District of Connecticut, 489 F.Supp. 932, indicted Markland for delay of the mail, possession of stolen mail and theft of mail by a postal employee. *See* 18 U.S.C. §§ 1703(a), 1708 and 1709 (1976). On May 15, 1980, after a suppression hearing, the district judge suppressed the two parcels as evidence, concluding that they were the product of an illegal search. The court also prohibited the use for any purpose at trial of an allegedly false exculpatory statement. We reverse.

### The Facts

On the evening of August 11th, Markland lost control of his personally ·owned jeep as he turned onto an exit ramp off Highway I–95 in Milford, Connecticut. The jeep hit a guardrail and overturned. All of its windows were shattered, and papers, coins, and other objects, including a plastic, zippered beverage container bearing a "Schlitz" beer logo, were scattered on the ground outside the vehicle.

Trooper Fragoso of the Connecticut State Police was dispatched to the accident scene. Upon his arrival, Fragoso found Markland on a stretcher in the back of an ambulance and ascertained that he was the driver of the overturned vehicle. Fragoso detected the odor of alcohol on Markland's breath but found him to be coherent. The nature and extent of Markland's injuries were unknown and he was taken to the Milford Hospital.

Officer Fragoso then proceeded to gather up the objects scattered around the overturned jeep. When he picked up the beverage bag, he found it to be surprisingly heavy and decided to check its contents before putting it in his own car. Unzipping the bag, he discovered two unopened mail parcels addressed to Sam Sloat, Inc., a coin dealer in Westport, Connecticut. Papers elsewhere at the scene disclosed that Markland was a postal employee.

Fragoso called United States Postal Inspector Ron Cesa and told him about the two parcels. Cesa informed Fragoso that numerous packages mailed to Sloat had disappeared and that there was no reason for Markland to have any parcels addressed to Sloat in his possession. Cesa also requested that Fragoso hold Markland for questioning, and Fragoso said he would.

Fragoso then drove to the Milford Hospital where he learned that Markland had suffered only minor cuts and bruises and that he was alert and in good spirits. Fragoso charged Markland with driving at an unreasonable speed and drove him to the West Haven Toll Plaza to meet with the postal inspectors. En route, Markland was read his *Miranda* warnings which he indicated he understood. While awaiting the postal inspectors at the Plaza, Markland complained of pain and was returned to the hospital. The hospital physician was satisfied that Markland was not seriously injured and injected him with a water placebo. He was then driven to the postal inspectors' office in New Haven.

In New Haven, Markland was informed of his *Miranda* rights a second time. He said he understood them and initialed a standard form on which they were printed. He also read and signed a standard waiver form. However, after answering several questions asked by Cesa, Markland declined to continue without an attorney. Cesa immediately ceased all questioning, but another inspector did not. In response to a question posed by the latter, Markland said that he was in possession of the packages be-

---

* Of the District of Connecticut, sitting by designation.

cause he was conducting his own investigation into the mail thefts.

### The Two Parcels

When Officer Fragoso found the beer package lying on the ground, the Fourth Amendment, as it was interpreted by the district court, permitted him one of two choices. He could either put the package in his automobile, completely ignorant of its contents, or he could drive away and leave it. Appellee suggests that the latter choice would have been the proper one. In his words:

> No significant governmental interest is served by the recovery of the property at all. If the police never recover any property as a matter of policy, then they are immune from any claims that they stole it, or in some way responsible for its loss (sic). The personal property of an individual is a matter of his personal concern and its preservation and recovery the duty of the individual. Should Markland have his property stolen by a bystander or simply lose the property, there is no meaningful impact on society. It is his loss. The government and the public are still whole.

Appellee's Brief 15.

■ This argument demonstrates a curious unawareness of a police officer's role in society. Police have a duty to protect both the lives and the property of citizens. *United States v. Gravitt*, 484 F.2d 375, 379 n.3 (5th Cir. 1973), *cert. denied*, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974); *Cotton v. United States*, 371 F.2d 385, 392 (9th Cir. 1967); *People v. Peters*, 18 N.Y.2d 238, 243, 273 N.Y.S.2d 217, 219 N.E.2d 595 (1966), *aff'd sub nom. Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *People v. Manzi*, 21 A.D.2d 57, 59 60, 248 N.Y.S.2d 306 (1st Dept. 1964). In performing this duty, they are required to protect against crime without waiting for it to occur. *People v. Manzi, supra*, 21 A.D.2d at 59–60, 248 N.Y.S.2d 306. The Connecticut state police are charged by statute with the duty of "preventing .... any violation of the criminal law...." Conn.Gen.Stat.

Ann. § 29·7. A law abiding citizen of that State, hospitalized following an accident and concerned about the security of his effects, may reasonably expect that the police will perform what the Supreme Court has described as their "community caretaking functions." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973). *See South Dakota v. Opperman*, 428 U.S. 364, 368–69, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). We need not decide whether the police could be held liable to the hospitalized citizen for a failure to perform these functions. *See Schuster v. City of New York*, 5 N.Y.2d 75, 91, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958) (Conway, C. J., dissenting); *People v. Manzi, supra*, 21 A.D.2d at 60, 248 N.Y.S.2d 306. They surely would be derelict in their duty to the public.

■ This does not mean, however, that Officer Fragoso was required to take the plastic thermal package into his custody with a "pig in a poke" obviousness as to its contents. This impersonal package could have contained anything from beer to bullion or a bomb. Its contents might have been perishable, valuable, or dangerous. There is nothing to indicate that Fragoso's protective procedures were a subterfuge for a criminal investigation. *See South Dakota v. Opperman, supra*, 428 U.S. at 370 n.5, 96 S.Ct. at 3097 n.5. The legitimacy of these procedures depended therefore upon their reasonableness. *Id.* at 369–·76, 96 S.Ct. at 3097. Unless we are prepared to say that a reasonable person would pick up a heavy plastic thermal package like the one in this case and drive away with it in his automobile without first checking its contents, we should not fault Officer Fragoso for making such a check.

■ But our conclusion that this was a reasonable search rests not only on the finding that the officer was properly performing a legitimate duty; it also rests in part on the nature of the object searched. The "Schlitz" bag was a type of container designed, and customarily used, for the storage and transport of food and drink. It was not a suitcase, briefcase, purse, or simi-

lar repository of personal effects "inevitably associated with the expectation of privacy," *see Arkansas v. Sanders*, 442 U.S. 753, 762, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235. Of course, containers not "inevitably" used for the storage of private effects may benefit from an expectation of privacy under some circumstances, but this generally requires that the owner have taken some additional positive step objectively signalling to others an expectation that the privacy of the container's contents will be respected. *See, e. g., United States v. Dien*, 609 F.2d 1038, 1044–45 (2d Cir. 1979), *adhered to on rehearing*, 615 F.2d 10 (2d Cir. 1980) (defendant manifested expectation of privacy by securely taping cardboard boxes and secreting them behind plywood barrier in van whose windows had been blacked out). In this case, the fact that the "Schlitz" bag was zipped shut–as it would ordinarily be in the course of normal use for storing food or drink–was not alone sufficient to give objective notice of an expectation of privacy, in view of the nature of the container. *Cf. United States v. Mannino*, 635 F.2d 110 (2d Cir. 1980) (no expectation of privacy in plastic bag on car seat). In view of this conclusion, we need not decide whether the officer's action would have been unreasonable had he opened a suitcase or other protected form of luggage. *Cf. United States v. Bloomfield*, 594 F.2d 1200 (8th Cir. 1979) (tightly sealed knapsack should have been inventoried as a unit).

Accordingly, the two parcels should not have been suppressed as evidence.

### The Post–Arrest Statements

Based on his findings of an illegal search, the district judge held that none of Markland's subsequent statements could be used for any purpose whatever on the trial. The Government challenges both the propriety and scope of this order. Because we hold that the statements were not the product of an illegal search, we need not determine whether the order was improperly broad. It cannot rest at all on the underpinnings established by the district court.

On remand, the district judge should determine whether any of defendant's statements should be suppressed in whole or in part because improperly obtained under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

The order appealed from is reversed, and the matter is remanded to the district court for further proceedings consistent with this opinion.