240 P.3d 1198 (2010)
STATE of Washington, Respondent,
v.
Eric ROBERTS, Appellant.
No. 63168-3-I.
Court of Appeals of Washington, Division 1.
October 25, 2010.
Brian S. Carmichael, Washington Appellate Project, Seattle, WA, for Appellant.
Stephen Paul Hobbs, Office of the Prosecuting Attorney, Seattle, WA, for Respondent.
SCHINDLER, J.
¶ 1 A jury convicted Eric Roberts of possession of cocaine found during a search of his car. For the first time on appeal, Roberts argues that under the Supreme Court's *1199 recent decision in Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the search violated his constitutional rights under the Fourth Amendment and article 1, section 7 of the Washington State Constitution. Roberts concedes there were two plausible grounds for the police to search his car, a search incident to arrest and an inventory search, but asserts that the record shows the primary purpose of the search was to find contraband. The State contends that Roberts waived his right to challenge the search because he did not file a motion to suppress or challenge the search of his car at trial. The State also argues Roberts cannot show the constitutional claim of error is a manifest error under RAP 2.5(a)(3), because the record is insufficient to determine whether Gant applies and whether the inventory search was valid.[1] Because we conclude that the record is insufficient to evaluate the merits of the claimed constitutional error, review is not warranted under RAP 2.5(a)(3).[2]

FACTS
¶ 2 The facts are not in dispute.[3] At approximately 10:00 p.m. on April 10, 2008, King County Sheriff Deputy Joseph Eshom was on patrol in the north end of Seattle when he noticed a car driving in the fast lane with a license plate violation. Deputy Eshom ran a computer check of the license plate with the Department of Licensing (DOL). According to the DOL records, the registered owner of the car was Eric Roberts, and his driver's license was suspended. Deputy Eshom pulled the car over. Deputy Eshom approached the driver's side window, and asked the man for his driver's license, registration, and proof of insurance. A woman was sitting in the front passenger seat of the car. The driver was confrontational and refused to roll the window down more than an inch, but gave the Deputy his driver's license.
¶ 3 The license identified the driver as Eric Roberts. Deputy Eshom called Deputy Ryan Miculcik to assist him in arresting Roberts for driving with a suspended license. When Deputy Miculcik arrived approximately five minutes later, the deputies told Roberts he was under arrest for driving with a suspended license. The woman asked if she could leave. The deputies told her she was free to go. The woman got out of the car and walked away.
¶ 4 Roberts locked the car doors and refused to get out of the car. Roberts questioned the authority of the deputies to arrest him, and told the deputies that they should give him a citation. Eventually, the deputies persuaded Roberts to get out of the car.
¶ 5 Deputy Eshom arrested Roberts, handcuffed him, and detained him at the rear of the car. Roberts told the deputies that they could not search his car. Deputy Eshom testified that it was standard procedure to search the car incident to arrest for contraband and to conduct an inventory search because "[w]e're also getting ready to tow the vehicle. . . ." At trial, Deputy Eshom testified:
Q: Is it standard operating procedure to search the car when the driver is arrested?
A: Yes.
Q: Why is that?
A: Search for contraband. We're also getting ready to tow the vehicle so to make sure there's nothing in the vehicle before it's towed away. But everybody we arrest, we search their person and the vehicle they were in *1200 anywhere in the vehicle they could reach.
¶ 6 Deputy Miculcik also testified that he told Roberts that the standard policy is to conduct an inventory search of the car before towing it, when arresting a driver for driving with a suspended license. At trial, Deputy Miculcik testified:
A: He said thatwell, first of all, he wasn't going to get out of the car, thought that maybe this would be a ticket instead of arrested. And, again, our policy is we make an arrest on suspended license and take him from the car. So we're trying to explain to him that's our policy and that's what we were going to do.
Q: Did he eventually get out of the car?
A: Yes.
Q: What happened after that point?
A: Well, he says we can't search the car. Once again, it's policy once we arrest somebody from the vehicle, we do search the car prior toto inventory it prior to towing. So I searched the vehicle.
Q: What did youwhy is it that you searched the car when you arrest the driver?
A: Well, number of reasons. One's for inventory forif we decide to impound it on a suspended license, we want to inventory what's in the car and also for evidence. We have the right to search the car when someone's arrested from the vehicle.
¶ 7 When Deputy Miculcik searched the car, he found a small clear plastic baggie that contained a white powdery substance between the driver's seat and the center console. A field test indicated the substance was cocaine. The deputies transported Roberts to the King County jail. Meanwhile, Roberts' car was towed and impounded.
¶ 8 The State charged Roberts with one count of possession of cocaine in violation of the uniform controlled substances act, RCW 69.50.4013.
¶ 9 Pretrial, the defense filed a motion to suppress the statements Roberts made to the deputies. Following the CrR 3.5 hearing, the trial court ruled the statements were admissible.
¶ 10 Deputy Eshom, Deputy Miculcik, and a forensic scientist from the Washington State Crime Laboratory, testified at trial. The forensic scientist testified that the baggie of white substance seized from Roberts' car tested positive for cocaine. The defense objected to admission of the cocaine based on chain of custody. The court overruled the objection, and admitted the evidence.
¶ 11 In closing, the defense argued there was no evidence connecting Roberts to the cocaine found in his car. The jury found Roberts guilty of possession of cocaine. The court imposed a standard range sentence.

ANALYSIS
¶ 12 For the first time on appeal, Roberts argues that under Gant, the search of his car violated his constitutional rights under the Fourth Amendment and article 1, section 7.[4] The State argues Roberts waived his right to appeal because he did not file a motion to suppress the cocaine seized in the search of his car. The State also argues that the record is insufficient to determine whether the error is manifest.
¶ 13 In Gant, the Court rejected the long-accepted bright line rule in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) that allowed police to search incident to arrest because it "untether[ed] the rule from the justifications underlying the Chimel[[5]] exception. . . ." Gant, 129 S.Ct. at 1719. The Court held that because *1201 Chimel limited the scope of the search incident to arrest to the person and the area within his immediate control, the police may search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. Gant, 129 S.Ct. at 1723.
Accordingly, we hold that Belton does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle.
Gant, 129 S.Ct. at 1714.
¶ 14 However, the Court also held that the search of a vehicle incident to arrest is permissible when it is reasonable to believe evidence of the crime of arrest might be found in the vehicle. Gant, 129 S.Ct. at 1723.
¶ 15 In State v. Patton, 167 Wash.2d 379, 219 P.3d 651 (2009), our supreme court also rejected a bright line rule that allowed officers to conduct a warrantless search incident to arrest of the passenger compartment of a vehicle. Patton, 167 Wash.2d at 391, 219 P.3d 651. The court held that under article I, section 7, "the search incident to arrest exception requires a nexus between the arrestee, the vehicle, and the crime of arrest, implicating safety concerns or concern for the destruction of evidence of the crime of arrest." Patton, 167 Wash.2d at 384, 219 P.3d 651.
¶ 16 As a general rule, we will not consider a claim of error raised for the first time on appeal unless the defendant shows it is a "manifest error affecting a constitutional right". RAP 2.5(a); RAP 2.5(a)(3); State v. O'Hara, 167 Wash.2d 91, 98, 217 P.3d 756 (2010); State v. McFarland, 127 Wash.2d 322, 332-33, 899 P.2d 1251 (1995). The manifest constitutional error exception to the general rule is a narrow one. State v. WWJ Corp., 138 Wash.2d 595, 602, 980 P.2d 1257 (1999); McFarland, 127 Wash.2d at 333, 899 P.2d 1251. RAP 2.5(a)(3) is not meant to allow defendants to obtain a new trial "whenever they can identify some constitutional issue not raised before the trial court." McFarland, 127 Wash.2d at 333, 899 P.2d 1251. To show manifest error under RAP 2.5(a)(3), the defendant must identify a constitutional error and show how, in the context of trial, the claimed constitutional error actually affected the defendant's rights"it is this showing of actual prejudice that makes the error `manifest', allowing appellate review." McFarland, 127 Wash.2d at 333, 899 P.2d 1251.
¶ 17 Where, as here, the claimed error is of constitutional magnitude, the court must determine whether the error is manifest error that results in actual prejudice. O'Hara, 167 Wash.2d at 99, 217 P.3d 756; McFarland, 127 Wash.2d at 333, 899 P.2d 1251. Essential to the determination of actual prejudice is the necessity of a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case. WWJ Corp., 138 Wash.2d at 603, 980 P.2d 1257. Absent an affirmative showing of actual prejudice, the error is not "manifest," and thus, is not reviewable under RAP 2.5(a)(3). O'Hara, 167 Wash.2d at 99, 217 P.3d 756; McFarland, 127 Wash.2d at 334, 899 P.2d 1251.
¶ 18 Further, if the record is insufficient to determine the merits of the constitutional claim of error and the facts necessary to adjudicate the claimed error are not in the record, "no actual prejudice is shown and the error is not manifest" under RAP 2.5(a)(3). McFarland, 127 Wash.2d at 338, 899 P.2d 1251. Where the error is based on trial counsel's failure to move to suppress, the defendant must also show that the trial court would have likely granted the motion. McFarland, 127 Wash.2d at 333-34, 899 P.2d 1251.
¶ 19 The parties dispute whether the record is sufficient under RAP 2.5(a)(3) to evaluate Roberts' claim that the warrantless search of his vehicle violated his constitutional rights. While Roberts concedes the record suggests two plausible explanations for the search in this case, "search incident to arrest and an inventory search," he contends the record shows that the primary purpose of the search was to find evidence of an additional crime. We disagree.
¶ 20 The record shows that the deputies searched the car as a search incident to arrest and for inventory purposes at the *1202 same time. While the search incident to arrest of a defendant who is arrested for driving with a suspended license, and is in handcuffs and removed from the car, is impermissible under Gant and Patton, a valid inventory search is not. If deputies conducted a valid inventory search, a motion to suppress would have been denied.[6]
¶ 21 Under article 1, section 7, warrantless searches are per se unreasonable. State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996). However, our supreme court has recognized a limited number of "`jealously and carefully drawn' exceptions" to the warrant requirement, including an inventory search. Hendrickson, 129 Wash.2d at 70-71, 917 P.2d 563 (quoting State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980) (quoting Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979))).
¶ 22 An inventory search must be based on a valid arrest. State v. Montague, 73 Wash.2d 381, 385, 438 P.2d 571 (1968). In preparation for lawfully impounding a vehicle, the police can conduct a warrantless inventory search. State v. Morales, 154 Wash.App. 26, 48, 225 P.3d 311 (2010). Evidence discovered during an inventory search is admissible "where the search is not made as a general exploratory search for the purposes of finding evidence of crime." Montague, 73 Wash.2d at 385, 438 P.2d 571.
When ... the facts indicate a lawful arrest, followed by an inventory of the contents of the automobile preparatory to or following the impoundment of the car, and there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory search for the purpose of finding evidence of crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person's detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed.
Montague, 73 Wash.2d at 385, 438 P.2d 571.
¶ 23 An impoundment is lawful if authorized by statute or ordinance. State v. Singleton, 9 Wash.App. 327, 331, 511 P.2d 1396 (1973). Under RCW 46.55.113(1) a vehicle is subject to impoundment whenever a driver is arrested for driving with a suspended license. RCW 46.55.113(2)(d) also authorizes the police to impound a vehicle whenever the driver of a vehicle is arrested and taken into custody. An impoundment must be reasonable in order to satisfy constitutional requirements. State v. Barajas, 57 Wash.App. 556, 561, 789 P.2d 321 (1990). Whether a particular impoundment is reasonable is determined based on the facts of each case. State v. Greenway, 15 Wash.App. 216, 219, 547 P.2d 1231 (1976). If available, the police must also consider reasonable alternatives to impoundment. State v. Hardman, 17 Wash. App. 910, 912, 567 P.2d 238 (1977).
¶ 24 Here, there is no dispute that before the search, Roberts was lawfully arrested for driving with a suspended license. Deputy Eshom testified that the search was conducted both as a search incident to arrest and to perform an inventory search before towing the car. Deputy Miculcik conducted the search. Deputy Miculcik's testimony indicates that the primary purpose of the search was to conduct an inventory search before towing the car. "[I]t's policy once we arrest somebody from the vehicle, we do search the car prior toto inventory if prior to towing."
¶ 25 Because the defense did not file a CrR 3.6 motion to suppress the cocaine seized from the car, the record is not sufficient to determine the merits of Roberts' claim that the primary purpose of the search was to find contraband, not to conduct an inventory search. The record is also not adequate to determine whether the inventory search was reasonable or there were reasonable alternatives to impoundment. Accordingly, we conclude the record is insufficient to address the *1203 merits of whether the inventory search was a valid basis for the search. McFarland, 127 Wash.2d at 338, 899 P.2d 1251.

CONCLUSION
¶ 26 While the warrantless search of Roberts' car involves an error of constitutional magnitude, the record is inadequate to evaluate the merits of the constitutional claim of error, and whether the police conducted a valid inventory search of his car. As such, we conclude the claim of error is not manifest and review is not warranted under RAP 2.5(a)(3).
¶ 27 We affirm.[7]
WE CONCUR: DWYER, C.J., and LAU, J.
NOTES
[1] Even if Gant applied, the State argued that based on the good faith exception, the evidence should not be suppressed. We accept the State's concession at oral argument that under State v. Afana, 169 Wash.2d 169, 233 P.3d 879 (2010), the good faith exception does not apply.
[2] The State relies heavily on a Division II case, State v. Millan, 151 Wash.App. 492, 212 P.3d 603 (2009), rev. granted, 168 Wash.2d 1005, 226 P.3d 781 (2010), to argue that Roberts waived his right to challenge an illegal search under Gant for the first time on appeal, by failing to move to suppress the evidence at trial. We recognize the divergent lines of cases from Division II addressing this issue. See Millan and State v. McCormick, 152 Wash.App. 536, 216 P.3d 475 (2009). However, because we conclude that the record is insufficient to evaluate the merits of Roberts' claimed constitutional error under RAP 2.5(a)(3), we need not address waiver.
[3] Unchallenged findings of fact are treated as verities on appeal. State v. Buelna Valdez, 167 Wash.2d 761, 767, 224 P.3d 751 (2009).
[4] The State concedes that the Supreme Court's decision in Gant applies retroactively in this case. "[A] decision of [the Supreme Court] construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." United States v. Johnson, 457 U.S. 537, 562, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (The rule applies even to decisions constituting a "clear break" with past precedent have retroactive application).
[5] Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
[6] At oral argument, the State conceded that an inventory search is not a valid alternative ground for the warrantless search based on our supreme court's recent decision in State v. Winterstein, 167 Wash.2d 620, 220 P.3d 1226 (2009). We reject the State's concession as not well-taken. Nothing in Winterstein invalidates an inventory search where the testimony establishes it was conducted at the same time as a search incident to arrest for legitimate reasons.
[7] Under McFarland, the remedy is to file a personal restraint petition. McFarland, 127 Wash.2d at 339, 899 P.2d 1251.